[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
ISSUE
Should the plaintiff's first amended complaint be dismissed for lack of subject matter jurisdiction because the claims asserted are preempted by the National Labor Relations Act, 29 U.S.C. § 151, et seq.?
PROCEDURAL HISTORY
On June 18, 1996, the plaintiff, Peter Mercuri, filed an four count amended complaint against the defendant, Northeast Utilities.[1] The complaint alleges the following facts. The defendant is a Connecticut corporation doing business in this state. The plaintiff was employed by the defendant as a member of the defendant's Site Engineering and Maintenance Group. In 1993, the plaintiff and other members of this group filed a grievance objecting to a proposed work schedule which would require them to work on Saturdays and Sundays. Thereafter, in January 1994, the defendant terminated the plaintiff's employment.
Count one alleges that the grievance constituted a "concerted activity" and that the plaintiff's discharge violated the "public policy of the State of Connecticut which protects concerted activity in accordance with the National Labor Relations Act, 29 U.S.C. § 141 et seq."
(Plaintiff's First Amended Complaint, June 18, 1996, paras. 6, 10). CT Page 930
Count two incorporates the allegations of count one and alleges that the plaintiff's discharge violated an oral agreement between the parties, which agreement provided that the defendant would only discharge employees for reasons that were fair. The plaintiff alleges that his discharge was in retaliation for concerted activity and was unfair.[2]
Count three incorporates the allegations of count one and alleges that the plaintiff's discharge breached an implied contract. According to the plaintiff, the employee handbook constituted a written agreement which permitted employees to use the defendant's grievance policy for resolving work-related concerns.
Count four incorporates the allegations of count one and alleges a claim for negligent infliction of emotional distress. The plaintiff asserts that the defendant negligently inflicted emotional distress upon him by discharging him because of his concerted activity.
On August 30, 1996, the defendant filed a motion to dismiss the complaint for lack of subject matter jurisdiction on the ground that the claims are preempted by the National Labor Relations Act, 29 U.S.C. § 151, et seq. The plaintiff filed a memorandum in opposition to the motion on September 23, 1996. The arguments of the parties in support of and in opposition to the motion to dismiss are set out below.
DISCUSSION
A motion to dismiss may be used to contest the court's subject matter jurisdiction. McCutcheon Burr, Inc. v.Berman, 218 Conn. 512, 517, 590 A.2d 438 (1991). "Subject matter jurisdiction is the power of the court to hear and determine cases of the general class to which the proceedings in question belong." (Internal quotation marks omitted.)Tolly v. Department of Human Resources, 225 Conn. 13, 29,621 A.2d 719 (1993). "[T]he court, in deciding a motion to dismiss, must consider the allegations of the complaint in their most favorable light." (Internal quotation marks omitted.) Savage v. Aronson, 214 Conn. 256, 264, 571 A.2d 696
(1990).
1. Counts One and Two.
CT Page 931
In counts one and two, the plaintiff alleges that by filing a grievance he engaged in "concerted activity" protected under the National Labor Relations Act (Act) and that he was discharged in retaliation for this activity. Under § 7 of the Act, employees have the right to engage in "concerted activities for the purpose of collective bargaining or other mutual aid or protection. . . ." 29 U.S.C.A. § 157 (West 1973). Section 8 of the Act makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of rights guaranteed in section 7. . . ." 29 U.S.C.A. § 158 (West 1973 Supp. 1996).
The Supreme Court has held that "[w]hen an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." San DiegoBuilding Trades Council v. Garmon, 359 U.S. 236, 245,79 S.Ct. 773, 3 L.Ed.2d 775 (1959); Basilicato v. National Amusements.Inc., 3 Conn. App. 667, 671, 491 A.2d 1106 (1985).
In counts one and two, the plaintiff alleges that his discharge was in retaliation for concerted activity, namely, filing a grievance. The claims alleged in these counts are arguably preempted by the provisions of the Act which protect employees' rights to engage in such activity. In Buscemi v.McDonnell Douglas Corp., 736 F.2d 1348, 1350 (9th Cir. 1984), the plaintiff brought an action under California law for retaliatory discharge, wrongful termination of employment and intentional infliction of emotional distress. He alleged that he was discharged "in retaliation for passing out petitions and voicing employee complaints." Id., 1350. After the defendant removed the action to federal court, the retaliatory discharge claim was dismissed on the ground that it was within the exclusive jurisdiction of the Board. Id., 1349. The Court of Appeals upheld the dismissal, stating that "[a]ctivities to redress complaints about working conditions are `concerted activities' protected by the Act . . . Violation of an employee's right to engage in concerted activities are within the exclusive jurisdiction of the NLRB." Id., 1350.
The plaintiff appears to concede in his brief that counts one and two are preempted. He states that "all four counts of plaintiff's complaint are NOT based upon the CT Page 932 allegation that plaintiff was retaliated against for engaging in `concerted activity.' Only count one and two are based on such an allegation. Therefore, at the most, count one and two are subject to defendant's claim." (Plaintiff's Opposition to Defendant's Motion to Dismiss, 9/23/96, p. 1).
On the basis of the statutory language and the plaintiff's statement that counts one and two are based on concerted activity, the motion to dismiss these counts should be granted. The plaintiff argues, however, that the Board declined to assert jurisdiction and therefore this court may do so. In contrast, the defendant argues that the Board exercised jurisdiction and decided the matter adversely to the plaintiff.
The Act states that "[n]othing in this subchapter shall be deemed to prevent or bar . . . the courts of any State . . . from assuming and asserting jurisdiction over labor disputes over which the Board declines . . . to assert jurisdiction."29 U.S.C.A. § 164 (West 1978). "If a timely objection is interposed in a labor relations case, a court must yield and not exercise its jurisdiction if the controversy is `arguably' subject to the jurisdiction of the National Labor Relations Board . . . unless it appears that the Board has declined or would decline to assert jurisdiction." (Citations omitted.)Lay Faculty Assn. v. Roman Catholic Archdiocese of Newark,122 N.J. Super. 260, 300 A.2d 173, 178 (1973). "That determination by the Board may be evidenced in several ways, the most obvious by a showing that the controversy presented to the court had previously been presented to the Board and that it had refused to take jurisdiction." Id.; CWA v. Retarded Citizens,250 N.J. Super. 403, 594 A.2d 1348, 1352 (1991) (stating that there is an exception to the rule that a court must yield its jurisdiction when a dispute is arguably subject to the jurisdiction of the Board where it appears that the Board has or would decline jurisdiction.).
In this case, the same claims asserted in counts one and two were submitted to the Board. The plaintiff and others filed a charge against the defendant with the Board which asserted:
 On or about September 30, 1990, the above named employer by its officers, agents and representatives terminated the following employees: Joe Shell, Richard Stafford, Pete CT Page 933 Mercuri, Miguel Hernandez and Saverio Orlando, because they engaged in concerted activities with other employees of said employer for the purpose of collective bargaining and other mutual aid and protection and in order to discourage employees from engaging in such activities. (Defendant's Reply Brief to Plaintiff's Opposition to Motion to Dismiss, 10/18/96, Exhibit B).
The Board refused to issue a complaint. It "carefully investigated and considered" the charge and found that "the investigation disclosed insufficient evidence that the Employer terminated its site maintenance attendants because they had concertedly complained about a change in their work schedules." (Defendant's Reply Brief to Plaintiff's Opposition to Motion to Dismiss, 10/18/96, Exhibit A: Letter from Peter B. Hoffman, Regional Director, National Labor Relations Board, to Anthony D. Collins, Esq., April 29, 1994). It is evident that the Board did not decline jurisdiction with respect to the claims asserted in counts one and two.
For the foregoing reasons, the claims asserted in counts one and two are preempted the Act and are hereby dismissed.
2. Count Three.
The plaintiff alleges that the defendant's employee handbook contained a policy statement implying that employees would not be penalized or discharged for filing complaints. He alleges that he was discharged for using the handbook's grievance "procedure" to protest an anticipated schedule change and that the discharge was therefore a breach of an implied contract.
The defendant argues that count three is preempted because it alleges that the discharge was in retaliation for concerted activity. The defendant refutes the plaintiff's assertion that count three is a claim for retaliation against an individual grievance, pointing out that the plaintiff has not alleged that he filed an individual grievance. In addition, the defendant contends that matters arguably within the scope of the Act are preempted, even when they are alleged as a common law cause of action.
The plaintiff maintains that he filed an individual CT Page 934 grievance against the defendant and that this court has subject matter jurisdiction. He argues that, although count three incorporates the allegations of count one regarding concerted activity, these allegations are "superfluous" to the cause of action alleged in count three.
The plaintiff seeks to have the court disregard the express factual allegations in count three and infer other factual allegations which are not alleged. As pled, count three states that the discharge was "a result of using the grievance procedure to protest an anticipated change in schedule." (Amended Complaint, 6/18/96, para. 13). The grievance is set out in count one, which count is incorporated into count three. The grievance described in count one is the only grievance alleged. Although the plaintiff attempts to plead a common law cause of action for breach of an implied contract, the concerted activity is the gravamen of count three. See Satterfield v. Western Electric Co., 758 F.2d 1252,1254 (8th Cir. 1985) (discussing cases in which an employee's common law cause of action was preempted "because it was founded on conduct arguably within the ambit of sections 7 and 8 of the NLRA."). Accordingly, count three is preempted.
2. Count Four.
The defendant contends that the plaintiff's state law claim for negligent infliction of emotional distress is preempted.
The Act does not expressly preempt state law claims. As noted earlier, Garmon established the exclusivity of the provisions of the Act for claims arguably within its purview. Later, in Farmer v. United Brotherhood of Carpenters Joinersof America, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338
(1977), the Court established an exception to the Garmon
doctrine for state law actions for emotional distress.
The initial inquiry in a preemption analysis, then, is whether the alleged conduct is arguably protected or prohibited by the Act. Clayton v. Gold Bond Building Products, 679 F. Sup. 637,639 (E.D. Mich. 1987). Only after this determination is made does it become necessary to consider whether an exception to preemption applies to revest the court with jurisdiction. Id. CT Page 935
The plaintiff alleges that he suffered emotional distress because the defendant discharged him as a result of his concerted activity. For reasons stated earlier in this memorandum, the conduct alleged by the plaintiff is arguably protected under § 7 of the Act and therefore is within the primary jurisdiction of the Board.
The issue now becomes whether an exception to preemption applies under the facts of this case. Campbell v. McLeanTrucking Co., 592 F. Sup. 1560, 1563 (E.D.N.Y. 1984) (stating that "[t]he exceptions to preemption operate after the conduct is found to be preemptable."). "[T]he major cases in this area provide no discernible point at which there is preemption on one side and no preemption on the other." Id., 1564. "The closest the Supreme Court has come to stating a minimum requirement for revesting jurisdiction in the courts was inFarmer." Id.
In Farmer v. United Brotherhood of Carpenters Joinersof America, supra, 430 U.S. 290, the petitioner brought a claim against the defendants in the Superior Court of California for intentional infliction of emotional distress. Id., 293. The California Court of Appeals reversed the judgment of the Superior Court in favor of the plaintiff on the ground that the court lacked subject matter jurisdiction because the action involved conduct arguably subject to the jurisdiction of the Board. Id., 294-95.
The Supreme Court granted certiorari to consider whether the Act preempts a tort action brought in state court to recover damages for the intentional infliction of emotional distress.[3]
The Court stated that, in recognizing exceptions toGarmon, it has analyzed "the scope of the general rule by examining the state interests in regulating the conduct in question and the potential for interference with the federal regulatory scheme." Id., 297. The Court found that the state has a substantial interest in protecting its citizens from outrageous conduct. Id., 302. In addition, the court reasoned that regardless of whether the operation of the union was lawful or unlawful under federal statutes, there is no federal protection for the outrageous conduct of which the plaintiff complained. Id. Thus, there was no risk that permitting the state cause of action to proceed would interfere with the effective administration of national labor policy. Id. Under CT Page 936Farmer, "the finding of a significant state interest and no risk of identical issue adjudication taken together . . . justifie[s] an exception to the preemption rule." (Internal quotation marks omitted.) Campbell v. McLean Trucking Co.,
supra, 592 F. Sup. 1564.
The Farmer Court did acknowledge that "[i]n the context of . . . [the petitioner's] other allegations of discrimination in hiring hall referrals . . . [the petitioner's] allegations of tortious conduct might form the basis for unfair labor practice charges before the Board." Id., 301-02. "The occurrence of the abusive conduct, with which the state tort action is concerned, in such a context of federally prohibited discrimination suggests a potential for interference with the federal scheme of regulation." Id., 304. According to the Court, "a rigid application of the Garmon doctrine might support the conclusion of the California courts that . . . [the petitioner's] entire action was preempted by federal law." Id., 302. Thus, the Court held that for the state court to have jurisdiction, "it is essential that the state tort be either unrelated to employment discrimination or a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather than a function of the threatened discrimination itself."[4] Id., 305.
While Farmer recognized an exception to the Garmon
doctrine for emotional distress, the exception is inapplicable in this action. Farmer involved discrimination in employment opportunities, and the Court found persuasive the fact that the state court action could be adjudicated without regard to the underlying labor dispute, i.e., the discrimination. The Farmer
court stated that if the charges were filed with the Board, the focus of the proceeding would be on whether the alleged conduct constituted employment discrimination and not on whether the conduct also caused emotional distress. Id., 304. The Court found that, under the facts of the case, the potential for interference with the federal scheme of regulation was insufficient to counterbalance the interest of the state in protecting its citizens. Id. In the present action, however, there is a greater risk of interference with federal regulations than that which existed in Farmer.
The concern over the risk of identical issue adjudication in preemption analysis expressed in Farmer is reflected in other Supreme Court and federal court decisions. CT Page 937 In Sears. Roebuck Co. v. San Diego County District Council ofCarpenters, 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209
(1978), the Court held that the plaintiff's state law action against the defendants for trespass in connection with picketing was not preempted by the Act. Id., 198. The Court stated that the "critical inquiry" in preemption analysis is "whether the controversy presented to the state court is identical to . . . or different from . . . that which could have been, but was not, presented to the Labor Board. For it is only in the former situation that a state court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch of the Garmon doctrine was designed to avoid." Id., 197-98. The Court stated that if Sears filed a charge with the Board "the federal issue would have been whether the picketing had a recognitional or work-assignment objective; decision of that issue would have entailed relatively complex factual and legal determinations completely unrelated to the simple question of whether a trespass had occurred. Conversely, in the state action, Sears only challenged the location of the picketing; whether the picketing had an objective proscribed by federal law was irrelevant to the state claim." Id., 198. Accordingly, the Court held that permitting the state court to adjudicate Sears' trespass claim did not create a realistic risk of interference with the Board's jurisdiction to enforce the statutory prohibition against unfair labor practices. Id.
In Carter v. Sheet Metal Workers' International Assn.,724 F.2d 1472 (1984), the court considered whether a state tort claim for intentional infliction of emotional distress was preempted by the Act. Id., 1473. The plaintiff alleged that the union's refusal to issue him a reinstatement card prevented him from obtaining suitable work and caused him emotional distress. Id., 1474-1475. The court found that the conduct of the defendants was the same conduct which would support an unfair labor practice complaint with the Board under a section of the Act which prohibits discrimination on any ground except failure to pay dues. Id., 1477. The court stated that "[t]he federal preemption doctrine provides that a disputant in a labor union controversy cannot file an action in a state court based upon a common law or statutory ground if the facts essential to the state court cause of action are the same as those essential to an unfair labor practice complaint." Id. CT Page 938
In the present case, the potential for identical issue adjudication is evident. The factual allegations supporting the emotional distress claim are that the plaintiff was discharged for "concerted activity" in filing a grievance. The Board investigated this claim and determined that the termination was for reasons unrelated to the filing. The state court's exercise of jurisdiction in this case would entail adjudication of issues already presented to and decided by the Board. Although the plaintiff alleges that the defendant's conduct caused him emotional distress, an issue not before the Board, the court's focus is properly on "the conduct which allegedly gives rise to Plaintiffs' claims, as opposed to the descriptive title given to a particular cause of action."Clayton v. Gold Bond Building Products, supra, 679 F. Sup. 639;Dunn v. Air Line Pilots Assn., 836 F. Sup. 1574, 1579 (S.D. Fla. 1993) (stating that "preemption analysis requires examining the 'substance' of the state law claims rather than their `form.' In the first instance, courts consider the defendants' behavior itself and whether this behavior is regulated by federal law, rather than the state cause of action assigned to the behavior."); Campbell v. McLean Trucking Co., supra, 592 F. Sup. 1564
(stating that "[a] mere labeling of the conduct complained of . . . does not satisfy the requirements necessary to avoid preemption . . . it is the conduct and not the legal description that is important.").
In Magnuson v. Burlington Northern, Inc., 576 F.2d 1367
(9th Cir. 1978), cert. denied, 439 U.S. 930, 99 S.Ct. 318,58 L.Ed.2d 23 (1978), the plaintiff, a train dispatcher, was fired when the railroad found he was responsible for a collision between two freight trains. Magnuson asserted that his discharge constituted intentional infliction of emotional distress. The court found that Magnuson did not state a claim for intentional infliction of emotional distress because his distress "was an incident of the wrongful discharge . . . Every employee who believes he has a legitimate grievance will doubtless have some emotional anguish occasioned by his belief that he has been wronged. Artful pleading cannot conceal the reality that the gravamen of the complaint is wrongful discharge." Id., 1369.
In the present case, the Board refused to issue a complaint because it found no merit to the plaintiff's claims. To prevail at trial in this action the plaintiff must disprove the Board's finding. The nature of the activity the court CT Page 939 would be regulating is conduct prohibited by the Act. Accordingly, the motion to dismiss count four is hereby granted.
D. Michael Hurley, Judge Trial Referee