## The Hanson Development Company *v.* East Great Plains Shopping Center, Inc.
### (12246)

Peters, C. J., Healey, Parskey, Shea and Dannehy, Js.

Argued October 12, 1984—decision released January 22, 1985

*Lester Katz,* for the appellant (defendant).

*James W. Sherman,* for the appellee (plaintiff).

DANNEHY, J. This case has been here before. It appears from the complaint that the action was brought to recover the sum of $10,000 which the plaintiff (the purchaser) alleged it had deposited with the defendant (the seller) as part of the purchase price under an agreement to purchase real estate. The complaint also alleged that the purchaser had made a demand upon the seller to repay the sum of $10,000 which was unavailing.

The seller's answer admitted that the purchaser had deposited the sum of $10,000 as a part of the purchase price, denied that one condition upon which the sale was contingent had not been met, and in each of two special defenses alleged that the purchaser under and by virtue of the original agreement as amended was not entitled to recover the deposit. By way of counterclaim the seller sought to recover damages from the purchaser because, as alleged, "the defendant . . . was ready, willing and able to convey . . . [the] property to the plaintiff pursuant to . . . agreements . . . but plaintiff terminated . . . [the] contracts."

The parties concede the following facts. On June 28, 1971, the parties executed an agreement by which the purchaser agreed to buy and the seller agreed to sell a commercial tract of land located in the town of Norwich. The total purchase price was $112,500, payable in installments as follows: a $10,000 deposit paid to the seller by the purchaser when the agreement was executed, and the balance on or before the date of closing, July 30, 1971.

The agreement contained three contingencies to be met by the purchaser. In the event any contingency was not satisfied prior to July 30, 1971, the purchaser could elect to terminate the agreement and the deposit would be returned. Unable to satisfy the contingencies,

on July 27, 1971, the purchaser notified the seller of its election to terminate the contract and requested the return of the deposit.

Thereafter, on September 15, 1971, the parties amended their agreement to change the date of closing to on or before October 15, 1971. They further agreed that if the purchase did not occur by that date, the purchaser would forfeit to the seller the $1000 consideration which it had paid for the extension of time within which to complete the transaction.

On January 20, 1972, the purchaser again gave notice to the seller that it intended to terminate the contract and demanded the return of its $10,000 deposit. The seller refused and this litigation commenced.

The matter was referred to *Hon. George E. Kinmonth,* trial referee, since deceased, who rendered judgment for the seller on the complaint and for the purchaser on the counterclaim. The trial referee stated his decision on the issues in the case and the factual basis of his decision in writing. In his memorandum of decision the trial referee stated that the purchaser "made no reasonable effort to comply with the third contingency having gotten involved with adjoining property which was in no way involved with the original contract of sale. Therefore the Court finds the issues for the defendant [seller] on the complaint." He also stated that the seller had failed to sustain its burden of proof on the counterclaim for damages. No request for a further articulation of the basis of the trial court's decision was made by either party.[1]

---

[1] In July of 1980, new counsel appeared for the seller and requested that the trial referee file a new memorandum of decision. The trial referee stated that after four years it was impossible for him to do so, whereupon the seller moved for a new trial, claiming that the trial referee had "become incapable of taking the action necessary to be taken by him for the purpose of an appeal . . . ." General Statutes (Rev. to 1979) § 52-268. The motion was denied by the court, *Hendel, J.* That denial was not assigned as error.

The purchaser appealed and the seller filed a cross appeal. The appeal was withdrawn, and this court ordered, suo motu, that judgment on the counterclaim be set aside and that the case be remanded for a new trial on the counterclaim only because the purchaser failed to defend against the cross appeal with proper diligence.

When the case was tried again, *Hon. Eli Kramer*, trial referee, rendered judgment for the purchaser with costs, and denied the seller's motion to open the judgment for reargument on the matter of damages. This appeal followed.

On appeal, the seller claims that: (1) the trial court erred in construing the $10,000 deposit as liquidated damages, thus foreclosing the seller from recovering actual damages; and (2) the trial court abused its discretion in denying the seller's request to amend its counterclaim to seek specific performance. There is no error.

Our order to the Superior Court stated that the judgment on the counterclaim was to be set aside and that the case was being remanded for a new trial on the counterclaim only.[2] The effect of the mandate was to abrogate the judgment for the purchaser on the counterclaim and to leave the case as it stood prior to the entry thereof. It is unnecessary to belabor the issue of liability except to say that here, of course, was a contract which the purchaser breached. The contract suffers from the defect of the absence of any provision that deals expressly with the damages the seller should receive on account of the breach. The seller argued that since the contract failed to come to grips expressly with

---

[2] The order stated: "It appearing that the cross-appeal in the above-captioned case has not been defended with proper diligence, it is, under Practice Book § 3109, ordered by the Supreme Court, suo motu, that judgment on the counterclaim be set aside and that the case be remanded for a new trial on the counterclaim only."

the question of damages in the event of a breach, the seller was entitled to actual damages. The purchaser took the position that the deposit of $10,000 constituted liquidated damages.[3] The trial referee agreed with the purchaser and rendered judgment accordingly.

At the outset, we note that the seller has initiated a very limited appeal. A transcript of the evidence submitted in the retrial was never prepared, or is at least unavailable for review.[4] The appellant, in this case the seller, bears the burden to show that there was error in the judgment from which he appeals. *St. Pierre* v. *St. Pierre,* 172 Conn. 11, 12, 372 A.2d 129 (1976). That burden includes the presentation of a full and proper record. The inadequacy of this record, while it does not foreclose review by this court, does limit our inquiry to the face of the record for a demonstration of errors of law or fact.

It is well settled that a seller may not retain a stipulated sum as liquidated damages and also recover actual damages. *Camp* v. *Cohn,* 151 Conn. 623, 626, 201 A.2d 187 (1964). It is equally well settled that a contract provision which imposes a penalty for breach of contract is invalid, but a provision which allows liquidated damages for breach of contract is enforceable if certain conditions are satisfied. *Norwalk Door Closer Co.* v. *Eagle Lock & Screw Co.,* 153 Conn. 681, 686, 220 A.2d 263 (1966). The requisite three conditions are that: (1) the damage which was to be expected as a result of a breach

[3] On appeal, the purchaser argues that the issue of liquidated damages was conclusively settled in the first trial under the doctrine of res judicata. The defense of res judicata must be specially pleaded. Practice Book § 164; *Nikitiuk* v. *Pishtey,* 153 Conn. 545, 553, 219 A.2d 225 (1966). The purchaser concedes that this was not done. Therefore, this claim cannot be considered.

[4] A transcript of the testimony received at the first trial was submitted into evidence by the purchaser on the retrial of the counterclaim and has been made a part of this record. Although the focus of the testimony centered on the issue of liability, there was testimony describing in detail the negotiations between the parties which led to the execution of the contract.

of contract was uncertain in amount or difficult to prove; (2) there was an intent on the part of the parties to liquidate damages in advance; and (3) the amount stipulated was reasonable. *Berger* v. *Shanahan,* 142 Conn. 726, 732, 118 A.2d 311 (1955). On appeal, the seller challenges only the trial court's finding as to the second condition, that there was an intent on the part of the parties to liquidate damages in advance. Our review, then, will be similarly focused.

The seller argues that, in the absence of an express contractual provision, the parties could not have intended to liquidate damages in advance. The provision of the contract for the $10,000 deposit did not characterize the deposit as either a penalty or liquidated damages. The exact language used by the parties, however, is not determinative. Rather, the intention of the parties is the determining factor. *Berger* v. *Shanahan,* supra, 732. In other words, was the provision intended to deter one party from breaching its contract and then penalize that party for doing so or was it intended to specify a sum which the parties, in good faith, agreed would represent the damages which would ensue from a breach? *May* v. *Young,* 125 Conn. 1, 9, 2 A.2d 385 (1938). This court has stated on numerous occasions that the determination of the intention of the parties is an inference of fact and, as such, is not reversible unless the trial court could not reasonably have arrived at the conclusion that it reached. See, e.g., *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.,* 183 Conn. 266, 274–75, 439 A.2d 314 (1981).

We have examined the record and it is abundantly clear that, as it appeared by the general purpose manifested by the entire contract and in the circumstances existing at the time of execution, the trial referee had sufficient evidence before him to consider the question of intent. Intent is determined from the terms of the contract read in light of the circumstances

attending its making including the motives and purposes of the parties. *Colonial Discount Co.* v. *Avon Motors, Inc.,* 137 Conn. 196, 201, 75 A.2d 507 (1950). The trial referee said in his memorandum of decision that the evidence "indicated that the parties were business people with expertise in the commercial real estate area and that they had negotiated at length concerning the various terms and contingencies of the Agreement." He reiterated this finding in his denial of the seller's motion to open the verdict and judgment and reargue the matter of damages, again emphasizing the prior negotiations and expertise of the parties. A factual finding will not be rejected on appeal merely because the reviewing court would have reached a different conclusion had it been sitting as the fact-finder. *Kaplan* v. *Kaplan,* 186 Conn. 387, 391, 441 A.2d 629 (1982). "[W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. That is the standard and scope of this court's judicial review of decisions of the trial court. Beyond that, we will not go." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

Examining the contract as a whole in light of the circumstances existing at the time of its making, the trial court had sufficient evidence from which to infer that the $10,000 deposit specified in the agreement was intended by the parties to constitute liquidated damages. The seller has presented no evidence to show that the trial court could not reasonably have arrived at the conclusion it reached. On the basis of the record before us, we cannot say that the conclusion reached by the trial court was not reasonable and logical.

In its second claim of error, the seller argues that Judge Hendel abused his discretion in refusing its request to amend its counterclaim in order to seek specific performance. This ruling was fully within the discretion of the court. A trial court has wide discretion in granting or denying amendments to the pleadings and rarely will this court overturn the decision of the trial court. *Citizens National Bank* v. *Hubney,* 182 Conn. 310, 312–13, 438 A.2d 430 (1980). There is nothing in the record to indicate why the additional relief was not requested when the counterclaim was first filed. More than eight years passed from the time the complaint was filed to the time when the seller sought to amend its counterclaim and the date set for retrial was rapidly approaching. "This court will not interfere with the decision of a trial court not to permit an amendment unless an abuse of discretion is clearly evident." (Citations omitted.) *DuBose* v. *Carabetta,* 161 Conn. 254, 263, 287 A.2d 357 (1971). Under the circumstances, there was no abuse of discretion. See *Rose* v. *Messier,* 1 Conn. App. 563, 565, 474 A.2d 100 (1984).

There is no error.

In this opinion PETERS, C. J., HEALEY and PARSKEY, Js., concurred.

SHEA, J., dissenting. The contract before us is in writing, and it characterizes the $10,000 paid to the defendant seller simply as a "deposit" to be credited upon the purchase price of $102,500. As the majority opinion states, there is no provision dealing expressly with the damages the seller should receive in the event of a breach. The opinion concludes, nevertheless, that the trial referee could reasonably construe the provision for a deposit as one for liquidated damages. I disagree with this wholly unprecedented construction of a quite ordinary provision for a security deposit.

There are no circumstances here which would suspend the operation of the rule that prior negotiations are deemed to be merged in a written contract. "It is, of course, fundamental, as a matter of substantive law, that the terms of a written contract which is intended by the parties to set forth their entire agreement may not be varied by parol evidence." *Maier* v. *Arsenault*, 140 Conn. 364, 367–68, 100 A.2d 403 (1953); see *Merritt-Chapman & Scott Corporation* v. *Mauro*, 171 Conn. 177, 194–95, 368 A.2d 44 (1976) (*Cotter, J.*, dissenting). Apparently the majority consider the absence of a provision for disposition of the $10,000 deposit in the event of a default by the buyer to create an ambiguity or an omission which permitted the referee to rely upon the testimony in ascertaining the intention of the parties. The opinion, however, fails to specify any testimony that would reasonably support a finding that the parties intended the $10,000 deposit as liquidated damages for nonperformance of the buyer. "[A]ny ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." *Reese* v. *First Connecticut Small Business Investment Co.*, 182 Conn. 326, 327, 438 A.2d 99 (1980). The transcript of testimony at the first trial, which was made an exhibit at the second trial,[1] contains nothing pertaining to the disposition of the $10,000 deposit if the buyer should not perform. It is undisputed, however, that when the parties, after the time for consummating the sale in the original agreement of June 28, 1971, had passed, agreed upon a new closing date of October 15, 1971, they expressly provided that the additional sum of $1000 paid for this extension was "to be forfeited if the Buyer fails to consummate this transaction . . . ." This agreement also states that such "forfeiture . . . shall not alleviate the Buyer for its respon-

---

[1] See footnote 4 of the majority opinion.

sibilities for damages should it breach this Agreement or the Agreement of June 28, 1971." It is clear that when the parties intended to provide for something in the nature of liquidated damages, they did so expressly. The reference in this extension agreement to not relieving the buyer of "its responsibilities for damages should it breach" either of the agreements of the parties is a further indication that the $10,000 deposit under the original agreement was not intended as liquidated damages.

The reliance of the majority on the trial referee's finding that the parties were experienced in commercial real estate transactions and had negotiated extensively concerning the terms of the sale is misplaced. Their expertise is all the more reason to assume that they included all of the significant terms of their agreement in the written contract and that the deposit was intended as security only. I can perceive nothing in the evidence to support a finding that the parties intended the deposit as liquidated damages. Accordingly, I dissent.

